UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24507-CIV-MORENO/O'SULLIVAN

SHELITHEA HALLUMS, individually,
and as representative of a class of
similarly-situated individuals,

    Plaintiff,

v.

INFINITY INSURANCE COMPANY and
INFINITY AUTO INSURANCE
COMPANY,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Defendants Infinity Insurance Company and Infinity Auto Insurance Company's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (DE# 5, 11/22/16). This motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. See Order of Referral to Magistrate Judge O'Sullivan Regarding Defendants' Motion to Dismiss (DE# 9, 12/12/16). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Defendants Infinity Insurance Company and Infinity Auto Insurance Company's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (DE# 5, 11/22/16) be **DENIED** for the reasons stated herein.

## BACKGROUND

On October 27, 2016, the plaintiff filed the instant action against the defendants.

The Complaint alleged the following causes of action: declaratory judgment (Count I), unjust enrichment (Count II), fraudulent concealment (Count III) and negligent omission (Count IV). See Class Action Complaint (DE# 1, 10/27/16) (hereinafter "Complaint").

On November 22, 2016, the defendants filed a motion to dismiss. See Defendants Infinity Insurance Company and Infinity Auto Insurance Company's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (DE# 5, 11/22/16) (hereinafter "Motion"). The plaintiff filed a response in opposition to the Motion on December 6, 2016. See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (DE# 7, 12/6/16) (hereinafter "Response"). The defendants filed a reply in support of the Motion on December 13, 2016. See Defendants Infinity Insurance Company and Infinity Auto Insurance Company's Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's Complaint (DE# 11, 12/13/16) (hereinafter "Reply"). This matter is ripe for adjudication.

## STANDARD OF REVIEW

The defendants move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Motion (DE# 1 at 1). In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc); St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 953

2

(11th Cir. 1986)). "Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions." Rios v. Israel, No. 16-CV-61978, 2017 WL 75522, at *2 (S.D. Fla. Jan. 9, 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The issue to be decided is not whether the plaintiff will ultimately prevail, but "whether the [plaintiff] is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984)).

## **ANALYSIS**

The defendants assert that the Complaint must be dismissed with prejudice because "[e]ach . . . claim[ ] is based upon Plaintiff's allegation that the Graves Amendment, 49 U.S.C. § 30106, forecloses the possibility of lessor liability and therefore the lessor liability endorsement constitutes no additional insurance coverage." Motion (DE# 5 at 2, 15). The defendants argue that the plaintiff's claims must be dismissed because: (1) the filed rate doctrine precludes judicial review of rates which have been approved by regulatory agencies such as the Florida Office of Insurance Regulation (hereinafter "OIR"); (2) "the doctrine of primary administrative jurisdiction counsels that a challenge to an insurance premium is better left to the expertise of the

OIR" and (3) "the lessor liability endorsement confers a valuable benefit to Plaintiff and is not illusory." Id. at 3-4. The defendants further argue that the plaintiff cannot prevail on her unjust enrichment claim (Count II) because a contract exists between the plaintiff and the defendants. Id. at 4.

At the outset, the plaintiff raises two peripheral issues: (1) while the Court may take judicial notice of the documents attached to the declaration of Jason Blalock,[1] the Court should not consider the statements made in the actual declaration because "Defendants are not allowed to supplement judicially-noticed records with their own argumentative explanations and inferences;" (2) if the Court considers the declaration of Mr. Blalock, the Court should delay ruling on the applicability of the filed rate doctrine until the discovery deadline has passed. Response (DE# 7 at 2-3).

The Court should deny both of the plaintiff's requests. The declaration of Mr. Blalock will help explain the public records filed with the OIR. The following is an example of one of Mr. Blalock's statements:

> Infinity Auto Insurance Company filed a premium rate schedule with the OIR on April 13, 2016, and the rates were approved by the OIR on June 30, 2016. Coverage for the lessor liability endorsement is reflected in the "Description" column of the rate filing and denoted by the prefix "L-". A true and correct copy of the rate filing approved by the OIR on June 30, 2016, is attached as Exhibit H to this Declaration, and reflects OIR-approved automobile insurance rates that were in effect until the present. Automobile insurance policies issued in Florida between June 30, 2016, and the present are subject to these filed approved rates. (Exhibit H).

---

[1] Mr. Blalock is the Vice President, Project Management, for Infinity Insurance Companies. See Declaration of Jason Blalock (DE# 5-1, 11/22/16). The defendants filed Mr. Blalock's declaration to support their argument that the filed rate doctrine bars the plaintiff's claims.

Declaration of Jason Blalock (DE# 5-1 at ¶12, 11/22/16). Without Mr. Blalock's declaration, the numbers and descriptions on the attached spreadsheets will make little sense. Moreover, Mr. Blalock's declaration stands for the proposition that on multiple occasions from 2004 through 2016, the defendants submitted premium rate schedules with the OIR, including coverage for the lessor liability endorsement, and that the OIR approved those rates. Id. at ¶¶5-12. The plaintiff does not dispute that the documents submitted to the OIR are public records. Accordingly, the Court should deny the plaintiff's request to exclude Mr. Blalock's declaration.

The Court should also deny the plaintiff's request to defer ruling on the applicability of the filed rate doctrine until the end of the discovery period. The plaintiff has not identified any additional discovery she would need to respond to the Motion. Moreover, courts have considered the filed rate doctrine at the motion to dismiss stage. See, e.g., Trevathan v. Select Portfolio Servicing, Inc., 142 F. Supp. 3d 1283, 1286-88 (S.D. Fla. 2015). Thus, it is not necessary to wait until the end of the discovery period to rule on this issue.

The undersigned will address the parties' substantive arguments below.

## I. The Filed Rate Doctrine

The defendants argue that the plaintiff's claims must be dismissed with prejudice because "[r]esolution of Plaintiff's claims, including her claim for declaratory relief, would inevitably require the Court to determine whether the rate approved by the OIR is reasonable." Motion (DE# 5 at 8). The plaintiff maintains that she "does not challenge the amount of the premiums that Defendants charge for the [Lessor Liability Endorsement]. Rather, Plaintiff challenges that Defendants charge such premiums in

the first place (irrespective of their amount or underlying rate) for an illusory product that is no insurance at all." Response (DE# 7 at 5).

The filed rate doctrine is inapplicable to the facts as pled in the Complaint. The filed rate "'doctrine holds that any "filed rate"—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings . . . .'" Allen v. State Farm Fire & Cas. Co., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999) (quoting Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994)). A review of the facts alleged in the Complaint show that the plaintiff is not challenging the reasonableness of the rate approved by the OIR. The issue here is not whether the defendants can charge a specific amount for lessor liability coverage. Rather, the plaintiff argues that the defendants cannot charge any amount for lessor liability coverage because it is an illusory product.

Gelfound v. Metlife Ins. Co., 998 F. Supp. 2d 1356 (S.D. Fla. 2014) is instructive. In Gelfound, the plaintiff challenged a rider to a long-term care policy which provided that "Plaintiff's Daily Benefit Amount for confined care was to be increased by 5% on each anniversary date of the Policy," but also provided that "increases to the Daily Benefit Amounts [would] not be provided on or past the Policy Date anniversary on which the Insured is age 86." Id. at 1358. This Court found the filed rate doctrine did not apply because the plaintiff was not challenging the reasonableness of the rate:

> Plaintiff does not challenge the amount of premiums charged. Rather, Plaintiff argues that the premiums should not have been charged at all after he turned 86 because MetLife ceased to provide any benefit in exchange for the payments. The "filed rate" doctrine does not bar Plaintiff's claims.

Id. at 1360.[2] Similarly here, under the plaintiff's theory of liability, <u>any</u> amount charged by the defendants for lessor liability coverage is unlawful because lessor liability coverage is illusory. In other words, the rationale underlying the filed rate doctrine does not apply to the instant case because in adjudicating the plaintiff's claims, the Court would not be required to determine a reasonable rate for lessor liability coverage. The issue to be determined by the Court is whether lessor liability coverage was illusory or not. Accordingly, the Court should deny the Motion based on the filed rate doctrine.

**II.     The Doctrine of Primary Administrative Jurisdiction**

The defendants also argue that the plaintiff's claims should be dismissed under the doctrine of primary administrative jurisdiction. "Where the issues raised require the expertise of administrative agencies, federal courts often decline to exercise . . . jurisdiction and refuse to hear the claim based on the doctrine of primary jurisdiction." <u>Tampa Interstate 75 Ltd. P'ship v. Fla. Gas Transmission Co.</u>, 294 F. Supp. 2d 1277, 1279 (M.D. Fla. 2003). The defendants note that "[i]n Florida, the OIR has primary jurisdiction over the setting of insurance rates." Motion (DE# 5 at 9). The defendants further note that the Florida insurance statute provides a mechanism for insureds to

---

[2] The defendants argue that <u>Gelfound</u> is inapplicable because in that case, "no evidence showed that the OIR specifically and continually approved the disputed coverage that the plaintiff alleged was illusory." Reply (DE# 5 at 8-9). The public records attached to Mr. Blalock's declaration show that the OIR approved the <u>rates</u> submitted for the Lessor Liability Endorsement. The regulatory approval of rates was precisely the argument advanced by the insurer in <u>Gelfound</u>. <u>See</u> <u>Gelfound</u>, 998 F. Supp. 2d at 1358 (noting that "[i]n the Motion presently before the Court, MetLife argues that the Complaint must be dismissed . . . because **the rates MetLife had charged had been approved by the state regulators**.") (emphasis added). This Court in <u>Gelfound</u> concluded that the plaintiff could proceed with his claim of illusory coverage despite the regulatory approval of rates. <u>Gelfound</u> is therefore analogous to the instant case.

7

challenge insurance rates by providing written notice to the insurance company, complaining to the OIR and seeking appellate review through Florida's District Courts of Appeal. Id. at 9-10 (citing Fla. Stat. § 627.371(1)). The defendants argue that the plaintiff is improperly circumventing that process by filing this lawsuit. Id. at 10.

The plaintiff argues that section 627.371(1) is not the proper vehicle to redress her claims because:

> the statute only authorizes the OIR to review and act on claims that (1) challenge rates charged, (2) on insurance afforded, (3) in contravention of the Rating Law. Here, Plaintiff does not claim that Defendants afforded insurance but charged rates contrary to the Rating Law. She claims that Defendants did not afford insurance, yet charged premiums for it. This is not a meaningless distinction; it is at the core of the parties' dispute because Plaintiff's claims require a determination of whether the Rider provides coverage, and if so, what coverage. This is exclusively a judicial function over which the OIR has absolutely no competence. Thus, the notion that the OIR has conducted or could conduct a substantive review of the Rider that encompasses a coverage determination is without basis.

Response (DE# 7 at 12) (footnote omitted).[3]

The doctrine of primary administrative jurisdiction is inapplicable to the instant case. As noted above, an adjudication of the instant case would not require that the Court second-guess the reasonableness of the Lessor Liability Endorsement rate approved by the OIR. Rather, the Court will need to determine whether any coverage is provided by the Lessor Liability Endorsement based on the language of the policy and

---

[3] The plaintiff also argues that the Burford abstention doctrine does not compel dismissal of the instant case noting that the doctrine is applied only in "extraordinary circumstances" and not where monetary damages are sought. Response (DE# 7 at 13-14). The Burford abstention doctrine is explained in New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989). Importantly, the defendants have not asserted the Burford abstention doctrine. See Reply (DE# 11 at 10) (stating that the defendants "did not advance Burford abstention because primary jurisdiction applies."). Accordingly, the Court does not need to address this doctrine in substance.

in light of the Graves Amendment. Federal courts routinely make insurance coverage determinations. Thus, the issues raised here do not require the expertise of administrative agencies and do not impinge on the OIR's primary jurisdiction to set insurance rates.

**III.    Whether the Lessor Liability Endorsement is Illusory**

The defendants further argue that the plaintiff's claims must be dismissed on the merits because the Lessor Liability Endorsement provides coverage or at the very least a benefit. See Motion (DE# 5 at 10-13).

   **a.    Whether the Lessor Liability Endorsement Provides Coverage**

The Complaint quotes the Lessor Liability Endorsement as follows:

**LESSOR LIABILITY ENDORSEMENT (Optional)**

In exchange for **your** increased premium, this endorsement has been added to **your** insurance policy.

The provisions in this endorsement are effective only while **the insured auto** is leased by **you**, for a period of at least six (6) months, as documented by a standard form lease agreement with expressly stated insurance coverage requirements.

During the term of this policy, the limits of coverage for damages **you** became legally obligated to pay, as defined by **your** policy, shall be those limits listed on **your Declarations Page**.

The endorsement provides the following additional Liability Coverage for your lessor:

**Bodily Injury:**      $100,000 per person
                        $300,000 per accident

**Property Damage:**  $50,000 per accident

This additional coverage will apply to damages **your** lessor becomes legally obligated to pay that arise from and are legally related to a loss

> covered under your policy.
>
> The coverage provided by this endorsement is in addition to that listed on **your Declarations Page** and is available only to indemnify **your** lessor pursuant to the terms listed herein.
>
> The provision of the coverages in this endorsement shall in no event increase our limits of liability for any damages **you** become legally obligated to pay, pursuant to the terms of **your** policy.
>
> If **we** terminate this policy, notice will also be mailed to the lessor. The lessor is not responsible for payment of premiums.

Complaint (DE# 1 at ¶11) (quoting Lessor Liability Endorsement) (bold emphasis in original). The Complaint further alleges that:

> The [Lessor Liability Endorsement] is illusory, invalid, unenforceable, and no insurance at all, as no risk is undertaken and there is no obligation to pay any of the purported "Bodily Injury" and/or "Property Damage" coverage benefits under any applicable set of circumstances. More specifically, **the [Lessor Liability Endorsement] purports to provide coverage for lessor liability arising from conduct attributable to an insured person, but said liability is foreclosed under the Graves Amendment, and the Rider does not otherwise provide any insurance**.

Id. at ¶12 (emphasis added).

The defendants note that the Graves Amendment only protects the lessors from vicarious liability; the lessors may still be held liable for their own negligence or criminal wrongdoing. See Motion (DE# 5 at 11-12). Thus, the defendants argue that the Lessor Liability Endorsement is not illusory because it "protects the lessor from having to defend and pay claims for incidents to which [the lessor's] own negligence was a contributing factor." Id. at 12.

The plaintiff responds that the Lessor Liability Endorsement does not cover a lessor's direct negligence because "to provide any coverage, the damages the lessor

10

becomes legally obligated to pay must be causally connected to 'a loss covered under [the] policy.'" Response (DE# 7 at 16). The Lessor Liability Endorsement states in part: "[t]his additional coverage will apply to damages **your** lessor becomes legally obligated to pay <u>that arise from and are legally related to a loss covered under your policy</u>." Complaint (DE# 1 at ¶11) (bold emphasis in original; underline added).[4] Thus, the plaintiff maintains that the policy provides no coverage for a lessor's direct negligence because, under the Lessor Liability Endorsement "[c]overage is first limited to the **damages** the lessor becomes **legally obligated to pay**, and then requires those damages to have a causal connection, not to the lessor or insured person's conduct, but to the **injury** (i.e., bodily injury and/or property damage) **for which an insured person is legally liable**." Id. at 17 (bold emphasis in original).

The plaintiff asserts that the Lessor Liability Endorsement does not provide coverage in instances where the insured is not at fault (for example, when the lessor's negligence is the sole cause of the accident) because, in those instances, the damages cannot stem from an injury for which the insured is legally liable. Response (DE# 7 at 17). The plaintiff further argues that the Lessor Liability Endorsement does not provide coverage even in instances where an accident is caused by both the insured's negligence and the lessor's negligence because "the injury portion for which an insured person becomes liable can never have any cause-and-effect connection to the damages a lessor becomes legally obligated to pay." Id. at 18.

---

[4] The parties are in agreement that the term "arise from" is broadly construed in Florida and requires "some causal connection or relationship." See Response (DE# 7 at 16); Reply (DE# 11 at 3) (quoting <u>Taurus Holdings, Inc. v. United States Fid. & Guar. Co.</u>, 913 So. 2d 528, 532 (Fla. 2005)).

In their reply, the defendants assert that there is nothing in the policy which "limits coverage under the lessor liability endorsement to claims that a lessor is vicariously liable for the lessee's negligence, which is the only type of liability addressed by the Graves Amendment." Reply (DE# 11 at 4). Under the defendants' reading of the Lessor Liability Endorsement, even accidents where the lessee is at fault "would . . . be covered by the policy because the lessor's claimed liability still 'arises from' an accident involving a covered loss under the policy, namely an accident involving an insured person and the insured vehicle." Id.

The Court must consider the Lessor Liability Endorsement in conjunction with the policy. The Lessor Liability Endorsement states in pertinent part: "This additional coverage will apply to damages **your** lessor becomes legally obligated to pay that arise from and are legally related to a loss covered under **your** policy." Complaint (DE# 1 at ¶11) (bold emphasis in original; underline emphasis added). Thus, the Court must look to the terms of the policy to determine what is considered "a loss covered under [the] policy." Part A of the policy addresses liability coverage and states, in part:

**INSURING AGREEMENT**

If the **Declarations Page** shows a premium charged for this coverage, **we will pay damages for bodily injury and property damage for which an insured person is legally liable** because of an **accident** up to the policy limits stated on the **Declarations Page**. **We** will not cover punitive or exemplary damages.

Insurance Policy (DE# 5-2 at 39) (bold emphasis in original; underline emphasis added).[5]  Under Part A, the insurer will only pay damages for which the insured is

---

[5] The plaintiff asserts that "Part A [of the policy] is the only section . . . pertinent to the analysis, as it encompasses the terms of liability coverage for bodily injury and

"legally liable." Accordingly, if the accident results in damages for which the lessee is <u>not</u> "legally liable" (for instance, if the damages were incurred through the lessor's own negligence) then, arguably, there would be no coverage for that portion which is attributable to the lessor's own negligence because the Lessor Liability Endorsement only provides coverage for damages the "lessor becomes legally obligated to pay that <u>arise from and are legally related to a loss covered under [the] policy</u>." Complaint (DE# 1 at ¶11) (bold emphasis omitted; underline emphasis added).

At this juncture in the proceedings, the Court should not dismiss the plaintiff's claims with prejudice. The plaintiff has asserted a plausible reading of the Lessor Liability Endorsement which would exclude from coverage bodily injury or property damage stemming from the lessor's own negligence.

### b. Whether the Lessor Liability Endorsement Provides a Benefit

The defendants further argue that the Lessor Liability Endorsement is not illusory because it confers a benefit on the lessee (the insured) by "protect[ing] the lessee from incurring an increased burden in its negotiation with the lessor." Motion (DE# 5 at 12). According to the defendants:

> A lessor, who faces the potential burden of being held liable for incidents related to its business of leasing vehicles, is likely to pass the cost of that coverage on to its lessees. This could take the form of increased costs for lessees or additional impediments to acquiring leases, such as more stringent lease eligibility requirements.

<u>Id.</u> at 12.

---

property damage to others . . . ." Response (DE# 7 at 16 n.15). The defendant does not address this assertion or point to other relevant policy provisions. Accordingly, the undersigned will consider only Part A of the policy.

There is no factual support for the defendants' arguments concerning cost-savings benefits. In their reply, the defendants cite to the letter attached to the plaintiff's response. Reply (DE# 11 at 6). The letter is from the defendants to an attorney representing two insureds. The letter states that it was the defendants' understanding that the lessor required the Lessor Liability Endorsement. See Letter (DE# 7-1 at 2, 12/6/16). The defendants argue that "[t]he fact that at least some lessors require this type of coverage is direct evidence that the endorsement provides non-illusory, valuable coverage." Reply (DE# 11 at 6).

Generally, at the motion to dismiss stage, the Court's analysis is limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court may also take judicial notice of certain facts, such as those contained in public records. See Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam). The letter is not a public record. However, because it was introduced by the plaintiff into these proceedings, the undersigned will consider it.

There is nothing in the letter that supports the defendants' argument regarding the cost-savings benefits of the Lessor Liability Endorsement. The letter itself merely assumes that the lessor required the coverage. Even if the defendants' assumption was correct, there is nothing in this letter which would support the defendants' speculative arguments concerning lessors "pass[ing] the cost of . . . coverage on to its lessees" by "increas[ing] costs for lessees or . . . [imposing] more stringent lease eligibility requirements." Motion (DE# 5 at 12). Without a sufficiently developed record, the defendants' arguments are pure conjecture. Given the lack of factual support on the

record and the procedural posture of this case, the Court should not consider the defendants' arguments concerning cost-savings benefits.

The defendants also note that "even if the lessor liability endorsement provided no direct coverage for vicarious lessor liability, it still confers a benefit in that it protects the lessor from the cost of defending such claims through the duty to defend that arises when a claim is asserted against a lessor." Motion (DE# 5 at 13). The plaintiff argues, in part, that there is no duty to defend because the Lessor Liability Endorsement "does not cover any claim a lessor may face." Response (DE# 7 at 18-19).

The plaintiff's claims should not be dismissed with prejudice on the basis that the Lessor Liability Endorsement could provide a legal defense benefit to the lessor in instances where a plaintiff pleads certain facts in the complaint. "Florida law imposes a duty to defend whenever the underlying facts contained in the complaint can be fairly read to support a claim covered by the indemnification provision." Pub. Risk Mgmt. of Florida v. One Beacon Ins. Co., 569 F. App'x 865, 871 (11th Cir. 2014) (citations omitted). As discussed above, the plaintiff has presented a reasonable reading of the Lessor Liability Endorsement which would not provide coverage of a lessor's own negligence. Thus, while the duty to defend is broader than the duty to indemnify, it is arguable whether the defendants would be legally obligated to defend claims based on the lessor's own negligence.

### IV.    The Plaintiff's Unjust Enrichment Claim

Lastly, the defendants argue that the plaintiff's unjust enrichment claim (Count II)

15

must be dismissed with prejudice because the insurance policy constitutes a contract between the plaintiff and the defendant. See Motion (DE# 5 at 14). The plaintiff maintains that the "[Lessor Liability Endorsement] is not a contract, not a part of the policy, and in any event, the parties' dispute – i.e., whether Defendants may charge premiums for an illusory product – is not governed by policy terms." Response (DE# 7 at 20).

"An unjust enrichment claim 'can exist only if the subject matter of that claim is not covered by a valid and enforceable contract.'" In re Takata Airbag Prod. Liab. Litig., 193 F. Supp. 3d 1324, 1344 (S.D. Fla. 2016) (quoting In re Managed Care Litig., 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002)). For the reasons stated above, it is plausible that the Lessor Liability Endorsement provides no coverage for lessor liability and therefore the existence of a valid contract (the insurance policy) would not be dispositive to the plaintiff's unjust enrichment claim. At this juncture in the proceedings, the Court should deny the defendant's motion to dismiss the unjust enrichment claim on the ground that the insurance policy is a valid contract between the parties.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants Infinity Insurance Company and Infinity Auto Insurance Company's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (DE# 5, 11/22/16) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a

copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **2nd** day of June, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Moreno
All Counsel of Record