UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-24507-CIV-MORENO

SHELITHEA HALLUMS and
SAMUEL CASTILLO,

        Plaintiffs,

vs.

INFINITY INSURANCE COMPANY,
INFINITY AUTO INSURANCE COMPANY,
and JPMORGAN CHASE BANK, N.A.,

        Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. **Background**

This case presents the following question: whether the Lessor Liability Endorsements in Plaintiffs' automobile insurance policies provide insurance at all, or whether they are illusory. Plaintiffs maintain that the Graves Amendment, 29 U.S.C. § 30106, forecloses the possibility of lessor liability, and therefore, the Endorsement constitutes no insurance coverage. Before the Court are the Parties' cross-motions for summary judgment. *See* D.E. 68 and 83.

Infinity moves for summary judgment on the issue of whether the Endorsement provides insurance. *See* D.E. 68. In support, Infinity advances six arguments: (I) Plaintiffs lack Article III standing; (II) even if the Endorsement is ambiguous, coverage exists under Florida law; (III) even under Plaintiffs' theory, coverage exists for accidents occurring in other states; (IV) Infinity has a duty to defend lessors, even against claims barred by the Graves Amendment; (V) even under Plaintiffs' theory, the remedy is not to void the Endorsement, but to ignore the exclusion

or limitation that renders it illusory and find coverage; and (VI) the filed-rate doctrine bars Plaintiffs' claims.

Plaintiffs move for partial summary judgment regarding Infinity's affirmative defenses on standing (defenses nos. 32, 35, 61), the filed-rate doctrine (defense no. 20), and fraudulent concealment (defense no. 9). *See* D.E. 56. Additionally, Plaintiffs move for summary judgment on whether the Endorsement provides insurance. For the following reasons, the Court finds that the Endorsement is not illusory because Plaintiffs' interpretation of the Endorsement would render the Graves Amendment's savings clause a nullity. Moreover, the Court finds that the Endorsement imposes a duty to defend. Therefore, summary judgment is granted in Infinity's favor because there is no genuine dispute of a material fact and Infinity is entitled to judgment as a matter of law.

II. **Legal Standard**

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). A jury must be able to reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). *Id.*

III. **Analysis**

2

**Standing**

Infinity argues that Plaintiffs lack standing in the absence of a denied claim. Article III limits federal "judicial power" to the resolution of actual "cases and controversies." *See* U.S. Const. art. III § 2. To construe an Article III case or controversy, the plaintiff must have standing. "[T]he irreducible constitutional minimum of standing contains three elements:" (1) the plaintiff must have suffered an "injury in fact;" (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

The crux of Infinity's argument is that Plaintiffs cannot be injured by an Endorsement that indemnifies a third party—Plaintiffs' lessors—not Plaintiffs. *See* D.E. 44 at ¶ 11 ("The [E]ndorsement provides the following additional Liability Coverage for **your** lessor."); *see also* D.E. 68 at 6 ("Because Plaintiffs adduce no evidence that their lessors rejected the Endorsement, Plaintiffs have no injury."). Thus, because Plaintiffs contend that an insurance policy that protects their lessors is illusory, Infinity submits that Plaintiffs lack standing. In support, Infinity relies on a bevy of cases that hold that an insured lacks standing to challenge the enforceability of an insurance policy, unless and until the insured actually makes a claim, and the insurer denies the claim. *See, e.g., Gonzales v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 2016 WL 5107033, at *10 (S.D.N.Y. Sept. 19, 2016) (finding no standing to claim policy was void under New York law where plaintiff never made a claim that was denied under the policy); *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2016 WL 739537, at *2 (N.D. Ga. Feb. 24, 2016) (dismissing the plaintiffs' "contention that if they had submitted claims, the [d]efendants would have denied [them]" as mere speculation, because "[i]t is impossible to know whether the [d]efendants would have denied their claims."); *Giercyk v. Nat'l Union Fire Ins. Co. of*

3

*Pittsburgh*, 2015 WL 7871165, at *5 (D.N.J. Dec. 4, 2015) ("[A]ny suggestion that [d]efendants would not honor [p]laintiffs' claims is mere speculation, and not a concrete harm," because "[p]laintiffs have not filed any claims."); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 249 (D.D.C. 2015) (holding that the plaintiff lacked standing where she claimed to have paid for an illusory insurance policy but never filed a claim); *Weaver v. Aetna*, 2008 WL 4833035, at *3 (D. Nev. Nov. 4, 2008), *aff'd*, 370 F. App'x 822 (9th Cir. 2010) ("[W]hile counts one through three allege [p]laintiff paid premiums for a nonexistent policy— seemingly an injury-in-fact—one could not deem a policy nonexistent unless she were improperly denied benefits. Any other claim of a 'nonexistent' policy ventures into the metaphysical, as one cannot know whether a policy exists until availing oneself of its benefits.").

Plaintiffs claim that *Williams, Gonzales, Giercyk,* and *Campbell* are wholly inapposite, because in those cases, the courts had determined that the insurance policy at issue—the HealthExtras benefit program—was not illusory as a matter of law, leaving the plaintiffs' to argue that the policy was worthless because the defendants would never pay the claims. *See Williams*, 2016 WL 739537, at *2 ("As the [d]efendants correctly point out, the [c]ourt has already held that the insurance policies were valid and enforceable, even if the insurance policies violated Georgia insurance laws . . . Because none of the [p]laintiffs submitted claims . . . [their] argument is mere speculation."); *Giercyk*, 2015 WL 7871165, at *5 ("Given the policy's enforceability, [p]laintiffs lack standing because . . . if [p]laintiffs filed a valid claim . . . any suggestion that Defendants would not honor [their] claims is mere speculation, and not a concrete harm."); *Campbell*, 130 F. Supp. 3d at 252 ("Accordingly, the [c]ourt finds that [the plaintiff's] allegation that the [policy] may have contained undisclosed exclusions that she believes [d]efendants would have used to deny any claims, had she made them, does not

4

constitute the type of concrete, particularized, actual injury that supports Article III standing . . ."). Further, Plaintiffs submit that the line of cases Infinity relies on, confirms a court's ability to determine whether a product is valid insurance irrespective of whether a claim has been submitted or denied.

The standing analysis boils down to: (1) the injury Plaintiffs allegedly suffered and (2) whether that injury is sufficiently concrete and particularized—not conjectural or hypothetical—to confer standing. *See Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . ."). Plaintiffs maintain they were injured upon payment to Infinity—thereby satisfying their lessors' requirements—for an allegedly illusory Endorsement. In return, Plaintiffs became "lessees" and obtained possession of the leased vehicles from their lessors. Thus, Infinity posits that the premiums paid by Plaintiffs do not constitute an injury, because Plaintiffs continue to reap the benefits of their bargains—possession of the vehicles. *See* D.E. 68 at 6. ("[B]ecause the Endorsement expressly covers only lessors, not Plaintiffs, any challenge to the sufficiency of the Endorsement must be brought by the lessors . . ."). Plaintiffs did receive what they bargained for, but did so at their financial expense, for an Endorsement that they allege can never trigger because it violates federal law.

Requiring Plaintiffs to file a claim on their policies before bearing an Article III injury would be—at best—futile in this limited instance, because the Endorsement indemnifies entities—Plaintiffs' lessors—that do not bear the cost of the premium. Indeed, the very basis on which Plaintiffs filed this suit is the theory that the Endorsement is illusory because there is no situation in which the policy does not violate the Graves Amendment. Infinity maintains that Plaintiffs lack standing because Plaintiffs "argue on behalf of ***third-party lessors***, who have

5

never made a claim or had a claim denied. They never contend *their* claim was denied." D.E. 68 at 5. Expecting Plaintiffs to file a claim on an Endorsement that does not indemnify them is nonsensical. Conversely, assuming *arguendo* that Plaintiffs have no standing because they have not suffered an injury, and thus, expecting their lessors to challenge the Endorsement, is similarly illogical, as the lessors are reaping the benefits—albeit through the power of contract—of being insured under an Endorsement they do not pay for. Accordingly, Plaintiffs have standing in this limited instance because they suffered concrete, cognizable injuries when they paid for an Endorsement that allegedly does not provide insurance.

**Ripeness**

Similarly, Infinity argues that this case is not ripe for review because it has not denied a claim. "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). The case is ripe for the Court's review, notwithstanding Infinity's contention that it has yet to deny a claim, because Plaintiffs suffered a concrete injury when they paid for an insurance policy that they allege does not provide insurance.

**The Endorsement**

The primary contention between the Parties is whether Infinity's obligation to indemnify Plaintiffs' lessors can ever arise in a scenario that is not foreclosed by the Graves Amendment. Plaintiffs assert that under the Endorsement, the damages that a lessor becomes legally obligated to pay post-Graves (and Infinity has an obligation to indemnify), can only stem from an injury for which the insured is legally liable. Such liability, Plaintiffs submit, falls squarely within the definition of "vicarious liability" that Graves did away with.

6

The Endorsement states in relevant part:

**LESSOR LIABILITY ENDORSEMENT (Optional)**

In exchange for **your** increased premium, this endorsement has been added to **your** insurance policy.

The provisions in this endorsement are effective only while **the insured auto** is leased by **you**, for a period of at least six (6) months, as documented by a standard form lease agreement with expressly stated insurance coverage requirements.

During the term of this policy, the limits of coverage for damages **you** became legally obligated to pay, as defined by **your** policy, shall be those limits listed on **your Declarations Page**.

The endorsement provides the following additional Liability Coverage for **your** lessor:

**Bodily Injury**: $100,000 per person
$300,000 per accident

**Property Damage**: $50,000 per accident

This additional coverage will apply to damages **your** lessor becomes legally obligated to pay that arise from and are legally related to a loss covered under **your** policy.

The coverage provided by this endorsement is in addition to that listed on **your Declarations Page** and is available only to indemnify **your** lessor pursuant to the terms listed herein.

The provision of the coverages in this endorsement shall in no event increase **our** limits of liability for any damages **you** become legally obligated to pay, pursuant to the terms of **your** policy.

If **we** terminate this policy, notice will also be mailed to the lessor.

The lessor is not responsible for payment of premiums.

D.E. 44 at ¶ 11 (emphasis in Amended Complaint).

In pertinent part, the Graves Amendment provides:

(a) In general.--An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--

> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106.

Infinity claims that the Endorsement is not illusory because it insures lessors in several plausible scenarios. For instance, Infinity suggests that the Graves Amendment does not bar claims of direct negligence against a lessor—such as negligent entrustment and negligent maintenance. *See, e.g.*, *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 457-58 (8th Cir. 2010) ("Although the Graves Amendment prohibits vicarious liability claims against owners of leased vehicles, [it] contains a savings clause which allows an owner of a leased vehicle to be found directly liable for the owner's negligence or criminal wrongdoing . . . and nothing indicates the 'negligence' term should be construed narrowly to exclude only claims for negligent maintenance."); *cf. Dubose v. Transp. Enter. Leasing, LLC*, No. 608-CIV-385-ORL-31DAB, 2009 WL 210724, at *5 (M.D. Fla. Jan. 27, 2009) (finding that the Graves Amendment savings clause—49 U.S.C. § 30106(a)(2)—only applies "to claims predicated on criminal wrongdoing and negligent maintenance claims—not claims of negligent entrustment."). Infinity

8

also posits that coverage exists for the lessor in any suit in which the insured is sued for a potentially-covered intentional tort, such as trespassing.

Finally, Infinity claims that the Endorsement provides insurance in a scenario where a lessor is found liable under a direct negligence theory—such as negligent entrustment or negligent maintenance—and can be held jointly and severally liable for the lessee's negligence in any state[1] that has not abolished joint and several liability. For example, a Florida lessee that drives the insured vehicle into Alabama and causes an accident will be jointly and severally liable with the lessor, if the lessor is sued for negligent entrustment or negligent maintenance, because Alabama is a pure joint and several liability state. *See Lafarge N. Am., Inc. v. Nord*, 86 So. 3d 326, 336 (Ala. 2011).

Plaintiffs make a causation argument in response. Plaintiffs argue that the Endorsement does not cover a lessor's direct negligence because coverage is first limited to the "**damages** that [the insured's] lessor becomes **legally obligated to pay** that **arise from** and are **legally related to a covered loss under [the] policy**." In essence, their position is that the Endorsement "purports to cover lessor liability that causally arises from—*i.e.*, it is secondary to—not the lessor's own conduct (or anyone else's conduct), but an underlying loss covered under a policy." D.E. 81 at 16. And this purported "vicariously liability" coverage is what Plaintiffs suggest the Graves Amendment foreclosed.

Plaintiffs' interpretation of the Endorsement would render the Graves Amendment's savings clause a nullity. It is true that the Graves Amendment preempts Florida's vicarious liability statute. *See Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1253 (11th Cir. 2008); *Vargas v. Enter. Leasing Co.*, 60 So. 3d 1037 1041-43 (Fla. 2011). Under Plaintiffs'

---

[1] Infinity's policy provides the lessor and lessee with liability coverage for an accident that occurs anywhere in the United States. D.E. 68 Ex. A p. 25 (Policy Period, Territory provision).

9

theory, a lessor's purported liability would never arise because it would stem directly from—*i.e.*, "causally arise from" or be "secondary to"—the actions of a lessee, and not the actions of a lessor. Plaintiffs' argument is readily analogized to the age-old adage: which came first, the chicken or the egg? That is, an automobile collision in which a lessee is at fault (first), that results in bodily injury or property damage covered under the policy, can never give rise to a claim against a lessor, because such claim amounts to vicarious liability (second), which is prohibited by the Graves Amendment. Such logic renders the Graves Amendment savings clause a nullity. The plain language of the savings clause makes clear that claims for a lessor's negligence or criminal wrongdoing are not prohibited. *See* 49 U.S.C. § 30106(a)(2) ("An owner of a motor vehicle that rents or leases the vehicle . . . shall not be liable . . . if . . . **there is no negligence or criminal wrongdoing on the part of the owner** . . .") (emphasis added). The truth is, the fact that a lessor's liability under the Endorsement can—as a matter of cause and effect—only stem from the action of its lessee, does not foreclose the possibility that liability can be imposed upon the lessor for its own negligence (first), that caused a collision in which the lessee was also negligent (second).

Indeed, courts have held that negligence claims can proceed against a lessor as a result of the savings clause. *See Carton*, 611 F.3d at 457-58 (permitting claims for negligent maintenance and entrustment under the savings clause); *Johnke v. Espinal-Quiroz*, No. 14-CV-6992, 2016 WL 454333, at *10 (N.D. Ill. Feb. 5, 2016) (requiring the plaintiff to re-plead claims against the lessor for "its own negligence (*e.g.*, negligent maintenance, negligent entrustment, etc.)"); *Palacios v. Aris, Inc.*, No. 08-CV-0746 JFB AKT, 2010 WL 933754, at *7 (E.D.N.Y. Mar. 11, 2010) ("Thus, even though the Graves Amendment may allow a rental car company to escape vicarious liability for another's negligence, by the Graves Amendment's very terms, the rental

car company will still be liable if the company itself is negligent."); *Johnson v. Alamo Fin., L.P.*, No. 6:09-CV-1768-ORL-19G, 2009 WL 4015572, at *3 (M.D. Fla. Nov. 19, 2009) (denying motion to dismiss where the plaintiff alleged that the lessor negligently maintained the leased vehicle); *Rivers v. Hertz Corp.*, 121 So. 3d 1078 (Fla. 3d DCA 2013) (affirming dismissal where the plaintiff failed to allege sufficient facts to show that the lessor had a duty under common law negligence).

Plaintiffs' argument does not hold water because a negligence claim against a **lessor** could never ripen until an injury occurred, as a result of a **lessee's** action that is covered under the Endorsement—be it negligence or an intentional tort. Stated simply, there is no plausible scenario in which a lessor could be sued for negligence—and the plaintiff suffered an Article III injury-in-fact—without the plaintiff in such case having suffered a cognizable injury as a result of a lessee's action. Vicarious liability, as precluded by the Graves Amendment, would hold a lessor negligent for the actions of its lessee. The Endorsement does not contemplate such. To the contrary, the Endorsement indemnifies a lessor for its **own liability** that arises as a result of **its own actions**. *See Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1248 (11th Cir. 2008) ("The distinction Congress drew is between liability based on the companies' own negligence and that of their lessees, not between limited and unlimited vicarious liability.").

In this case, whether the chicken or the egg came first is immaterial, because federal law says so. A ruling in Plaintiffs' favor would ostensibly require the Court to disregard the plain language of the savings clause—a task too tall for this Court. Congress explicitly permitted claims of negligence and criminal wrongdoing to proceed against a lessor, not from the lessee's action, but from the action of the lessor itself. Such liability is precisely what Infinity's Endorsement endeavors to indemnify.

### Duty to Defend

Next, Infinity argues that even if the Graves Amendment provides a complete defense to liability for **every** lessor in **every** case, it would still owe a duty to defend the lessor and raise the Graves Amendment as an affirmative defense. Plaintiffs contend, in somewhat circular fashion, that there is no duty to defend because the Endorsement is illusory. However, "Florida law imposes a duty to defend whenever the underlying facts contained in the complaint can be fairly read to support a claim covered by the indemnification provision." *Pub. Risk Mgmt. of Fla. v. One Beacon Ins. Co.*, 569 F. App'x 865, 871 (11th Cir. 2014) (internal quotations omitted). "[T]he duty to defend is broader than the duty to indemnify, in the sense that the insurer must defend even if the facts alleged are actually untrue or the legal theories unsound." *State Farm Fire & Cas. Co. v. Higgins*, 788 So. 2d 992, 996 (Fla. 4th DCA 2001), *approved*, 894 So. 2d 5 (Fla. 2004). "Once the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 812 (Fla. 1st DCA 1985).

As described *supra*, the Graves Amendment only bars **vicarious liability**—not all liability. Thus, it is plausible—rather, highly likely—for a lessor to be named as a defendant in a lawsuit. Even if Plaintiffs were correct, their position fails to take into account that the Endorsement does more than indemnify their lessors, it defends them—through the power of contract—from potentially covered claims even if those claims are barred under the Graves Amendment. Post-Graves, Infinity must continue defending lessors sued for claims that are barred by the law, because inevitably, a lessor will be named as a defendant under a theory of vicarious liability, as a result of the lessee's alleged negligence. In such a case, a lessor will incur cost associated with hiring counsel that will: analyze the claims asserted and determine whether

12

the suit is grounded in vicarious liability, and therefore foreclosed by Graves, or the savings clause, and therefore permitted to proceed against the lessor; presumably file a motion to dismiss relying on Graves as a defense if vicarious liability is asserted; and potentially defend the case on appeal. Plaintiffs agreed to be bound by the terms of the Endorsement and "there is [] a strong public policy favoring freedom of contract" and such freedom "be not lightly interfered with." *City of Largo v. AHF-Bay Fund, LLC*, 215 So. 3d 10, 16 (Fla. 2017). Indeed, "doubts concerning the duty to defend must be resolved in favor of coverage." *Wackenhut Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 15 F. Supp. 2d 1314, 1321 (S.D. Fla. 1998) (King, J.).

Infinity further maintains that the Endorsement has been honored and it has defended lessors in such suits, *see* D.E. 68 Ex. R at 3-7, but the Court need not decide whether claims have been paid to determine that a duty to defend indeed exists. In sum, the Court finds that the Endorsement imposes a duty upon Infinity to defend a lessor.

IV. **Conclusion**

The Endorsement is not illusory because Plaintiffs' interpretation of the Endorsement would render the Graves Amendment's savings clause a nullity. Even if the Graves Amendment provided a complete defense in every case, Infinity would still owe a duty to defend the lessor and raise the Graves Amendment as an affirmative defense. Accordingly, it is

**ADJUDGED** that

- Infinity's Motion for Summary Judgment **(D.E. 68)** is GRANTED
- Plaintiffs' Motion for Summary Judgment **(D.E. 83)** is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ of April 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record